**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elaine Wentzel,<br><br>            Plaintiff,<br><br>v.<br><br>Williams Scotsman Incorporated,<br><br>            Defendant. | No. CV-18-02101-PHX-SMB<br><br>**ORDER** |

    Pending before the Court is Defendant Williams Scotsman Incorporated's Motion for Summary Judgment, (Doc. 80, "Mot."). Plaintiff Elaine Wentzel responded, (Doc. 87, "Resp."), and Defendant replied, (Doc. 90, "Reply"). Both parties filed separate statements of facts with multiple exhibits. (Doc. 81, "DSOF"; Doc. 86, "PSOF"). The Court has considered the pleadings and viewed the evidence in the light most favorable to Ms. Wentzel and now enters the following Order.[1]

## BACKGROUND

    Elaine Wentzel worked for Williams Scotsman Inc., a modular office space provider, out of its Phoenix, Arizona office from September 3, 2013 until being fired on August 1, 2017. (PSOF ¶¶ 30-34, 126-27; DSOF ¶ 1.) Although Williams Scotsman initially hired her as a sales support center representative, she was eventually promoted to Account Executive on August 25, 2014, where her primary responsibility was leasing modular buildings and related products to businesses and public entities in Arizona. (PSOF

---
[1] Plaintiff requested oral argument, but the Court finds that the issues are adequately presented in the parties' briefs and can be resolved without hearing. LRCiv 7.2(f).

¶¶ 33-34; DSOF ¶ 1.) While employed at Williams Scotsman, Ms. Wentzel was the only female Account Executive working in the Phoenix office, where at most two Account Executives, including her, worked at any given time. (PSOF ¶¶ 33, 51; DSOF ¶ 2.) The Phoenix office split its sales responsibilities between the two Account Executives into a northern and southern territory, which were allegedly unequal in size and profitability.[2] (PSOF ¶¶ 38-39, 64-66, 78; DSOF ¶ 2.)

When Ms. Wentzel first started as an Account Executive at Williams Scotsman, Mr. Gomez supervised her in addition to serving as an area manager. (PSOF ¶ 33.) However, after Mr. Gomez stepped down from this position in June 2015, Mr. Reynolds assumed responsibility for Arizona's Account Executives.[3] (PSOF ¶¶ 43, 57, 64, 67.) Three months into Mr. Reynolds' supervision of Ms. Wentzel, she was placed on a performance improvement plan ("PIP"). (DSOF ¶¶ 7-14.) However, Ms. Wentzel was not immediately fired because her performance steadily improved in 2016. (*Id.* ¶¶ 14, 20.) Indeed, her 2016 performance improved so much that Williams Scotsman moved her off the PIP, (DSOF ¶ 15), and even recognized her for numerous sales performance achievements. (PSOF ¶¶ 121, 123-25.) Her 2017 performance appears no different. For example, she already met 67% of her sales goal in the first seven months of 2017. (DSOF ¶ 15.) This productivity even exceeded her 2016 sales performance, where she had reached only about 65% of her annual target sales goal after the first seven months. Additionally, although Ms. Wentzel was subject to the same sales incentive plan as Mr. Whitaker, the other Account Executive for 2016 and 2017, she earned more than him on an annual basis in 2016 and on a monthly basis in 2017. (PSOF ¶¶ 111-118; DSOF ¶¶ 3-6.) At any rate, notwithstanding Ms. Wentzel's remarkable sales performance relative to Mr. Whitaker, Williams Scotsman

---

[2] During Ms. Wentzel's time as an Account Executive, Williams Scotsman employed three other Account Executives: Mr. Mitchell, Mr. LeBlanc, and Mr. Whitaker. (PSOF ¶¶ 66-68, 71-72.) In addition to these individuals, Mr. Gomez also served as an Account Executive, but this role was collateral to being Ms. Wentzel's supervisor. (*Id.* ¶¶ 35-41.)

[3] While Mr. Reynolds was Ms. Wentzel's supervisor, she claims that he would: ask her to take overnight business trips with him; delay approving her lease deals, which would cost Williams Scotsman sales; belittle her in front of peers; deny her requests to receive training and be assigned to lucrative key accounts; not introduce her to important clients; and permit other Account Executives to take her sales commissions. (DSOF ¶¶ 44, 56-58, 60, 62-63, 80-84, 93, 96.)

fired her on August 1, 2017 because her overall performance remained unsatisfactory.[4] (PSOF ¶¶ 126-27; DSOF ¶¶ 17-21.)

Then about eleven months after being fired, Ms. Wentzel filed suit against Williams Scotsman. (*See* Doc. 1.) Her Complaint alleges: (1) a violation of the Equal Pay Act, 29 U.S.C. § 206(d); (2) sex discrimination under the Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-1463(B); and (3) disability discrimination under the ACRA, A.R.S. § 41-1462(B). (*See* Doc. 1.) Williams Scotsman now moves for summary judgment on all three. (Mot.)

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the movant fails to carry its initial burden, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz*

---

[4] Both parties agree that Ms. Fuller in human resources was consulted in Ms. Wentzel's termination. (PSOF ¶ 101; DSOF ¶ 17.)

*Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact. *Id.* at 1103. The nonmovant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the nonmovant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the non-moving party, *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

**DISCUSSION**

Williams Scotsman generally claims summary judgment is appropriate because Ms. Wentzel cannot point to evidence demonstrating a genuine issue of material fact to survive summary judgment. (Mot. at 2.) In stressing the importance of witness credibility determinations by the factfinder in employment discrimination cases, Ms. Wentzel argues summary judgment is unwarranted. (Resp. at 10-11.) However, as explained below, only Ms. Wentzel's second claim, sex discrimination under the ACRA, withstands Williams Scotsman's Motion. The Court addresses each of her three claims in further detail below.

**I.** <u>**Equal Pay Act, 29 U.S.C. § 206(d)**</u>

The Equal Pay Act ("EPA") provides in part:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . *at a rate less than the rate at which he pays wages to employees of the*

> *opposite sex* . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1) (emphasis added); *see also Hein v. Oregon Coll. of Educ.*, 718 F.2d 910, 913 (9th Cir. 1983) ("[The EPA] embodies the deceptively simple principle that employees doing equal work should be paid equal wages, regardless of sex." (internal quotation marks and citation omitted)).

### A. Ms. Wentzel Cannot Establish a Prima Facie Case Under the EPA.

To establish a prima facie case under the EPA, Plaintiff must "show[] that employees of the opposite sex were paid different wages for equal work." *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1074 (9th Cir.), *cert. denied*, 528 U.S. 1022 (1999). In other words, she must "show (a) that the jobs being compared are 'substantially equal' and (b) that she did not receive equal pay for that substantially equal work." *Huebner v. ESEC, Inc.*, No. CV 01-0157-PHX-PGR, 2003 WL 21039345, *2 (D. Ariz. Mar. 26, 2003) (citing *Stanley*, 178 F.3d at 1074). Plaintiff cannot establish a prima facie case because she was paid more than her alleged comparator, Mr. Whitaker.

#### 1. Substantially Equal Work

Plaintiff must first establish that her job is "substantially equal" to a job performed by someone of the opposite sex. *Stanley*, 178 F.3d at 1074. For this inquiry, the court compares the jobs in question, not the relative skills of the individuals holding those jobs. *Id.*; *see also Hein*, 718 F.2d at 914 ("The statute explicitly applies to jobs that require equal skills, and not to employees that possess equal skills."). The jobs need not be identical to be "substantially similar." *EEOC v. Maricopa Cty Cmty. Coll. Dist.*, 736 F.2d 510, 513 (9th Cir. 1984). Rather, "[i]t is the actual job performance requirements, rather than job classifications or titles, that is determinative," *id.* (citation omitted), and "[m]inor

differences in responsibility . . . do not make the equal pay standard inapplicable," *id.* at 514. "Courts examine whether the jobs at issue have a 'common core of tasks' and then determine whether any additional tasks required for one job but not the other make the two jobs substantially different." *Allender v. Univ. of Portland*, 689 F. Supp. 2d 1279, 1285 (D. Or. 2010) (quoting *Stanley,* 178 F.3d at 1074).

Here, Ms. Wentzel has met her burden of showing that her job is "substantially equal" to Mr. Whitaker's. *Stanley*, 178 F.3d at 1074. She and Mr. Whitaker, the only two Account Executives in Williams Scotsman's Phoenix office, shared similar if not identical job responsibilities for equal compensation.[5] *See Maricopa Cty*, 736 F.2d at 513. In arguing otherwise, Williams Scotsman claims Ms. Wentzel did not "perform[] the job with equal skill and/or effort as Whitaker." (Mot. at 6.) This argument is unpersuasive. *See Hein*, 718 F.2d at 914 ("The only comparison of skills that should be made in a prima facie case is a comparison of skills required by a job."). Defendant does not otherwise seriously dispute that Ms. Wentzel's and Mr. Whitaker's *jobs* require different skills.[6] (Mot. at 5-6; Reply at 5-6.) Thus, the Court is satisfied that Ms. Wentzel has shown that Mr. Whitaker performed substantially equal work as her at Williams Scotsman.

### 2. Different Wages

Establishing a prima facie case under the EPA also requires a plaintiff to show a wage disparity. *Hein*, 718 F.2d at 916-17. However, an EPA claim only exists for a plaintiff who is paid "at a rate *less* than the rate at which he pays wages to employees of the opposite sex . . . ." 29 U.S.C. § 206(d)(1) (emphasis added). Simply put, and as emphasized by the Ninth Circuit, "[i]f it should turn out that [a plaintiff] earns *more* than males performing substantially equal work, it is axiomatic that the Equal Pay Act does not afford her relief."

---

[5] In addition to having identical base salaries, both individuals were offered a guaranteed commission, albeit at different rates, for the first four months. (Doc. 81-1 at 5; Doc. 86-2 at 5.) Ms. Wentzel's guaranteed commission was $3,666.67 while Mr. Whitaker's was only $2,500.00. Neither party argues this difference in guaranteed commission somehow makes the two individuals' jobs substantially unequal.

[6] It appears Williams Scotsman even concedes the jobs are "substantially equal" because Ms. Wentzel and Mr. Whitaker share the same job title. (Mot. at 6; Reply at 5.) While incorrect, *see Maricopa Cty*, 736 F.2d at 513-14, its failure to argue the *jobs* are otherwise unequal beyond how the individuals *performed* their jobs is significant.

*Hein*, 718 F.2d at 916; *see also Huebner*, 2003 WL 21039345, at *3 (noting that a plaintiff can bring an EPA claim "only if her wages are less than the average paid to the appropriate male comparators").

As Williams Scotsman argues, (*see* Mot. at 7), Ms. Wentzel's EPA claim fails because she was paid more than her male comparator, Mr. Whitaker. *Hein*, 718 F.2d at 916; *see also* 29 U.S.C. § 206(d)(1). Notably, Ms. Wentzel concedes that "it's true that [she] ultimately earned more money than Mr. Whitaker." (Resp. at 18.) However, she nevertheless argues she was not paid at the same rate as Mr. Whitaker because "she had to do far more work for under far more difficult circumstances than [him]." (*Id.* at 18.) That is, she claims her "additional compensation was not commensurate to the additional work she had to do to earn it [compared to] Mr. Whitaker." (*Id.*) Ms. Wentzel's argument is unpersuasive. *See Berry v. Bd. of Supervisors of L.S.U.*, 715 F.2d 971, 976-79 (6th Cir. 1983) (rejecting plaintiff's EPA claim based on a "work load discrimination" theory at summary judgment because she was not paid less than her male comparators).[7] Even assuming Ms. Wentzel had to work *harder* than Mr. Whitaker for her pay, she was still paid *more*. The EPA's very text precludes a claim under these circumstances. *See* 29 U.S.C. § 206(d)(1). Accordingly, the EPA claim fails as a matter of law because she was not paid less than her male comparator.[8] *Hein*, 718 F.2d at 916-17.

## II. <u>Sex Discrimination Under the ACRA</u>

Plaintiff brings this claim under A.R.S. § 41-1463(B) of the ACRA, which is interpreted using federal case law.[9] *See Cisneros v. Sears, Roebuck & Co.*, 660 P.2d 1228,

---

[7] The Sixth Circuit in *Berry* further reasoned that plaintiff's argument that she had to do more work for the *same* pay failed because "the Equal Pay Act [has been] regarded as a limited measure aimed at preventing women from being paid *less* than men for the same work." *Id.*, 715 F.2d at 978 (emphasis added). Thus, the court there found summary judgment in favor of defendants appropriate in part because she was paid the same as her male comparators. *Id.*

[8] Because Ms. Wentzel fails to establish a prima facie case under the EPA, the Court need not consider whether Williams Scotsman established its affirmative defense that "any pay differential satisfies the third exception under the Act because payment is made pursuant to 'a system which measures earnings by quantity or quality of production.'" (Mot. at 7 (quoting 29 U.S.C. § 206(d)(1)(iii))); *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974).

[9] Neither party disputes Title VII case law's applicability for interpreting this claim.

1229 (App. 1982) ("Since the Arizona statute annotations refer to federal precedent and because Arizona is lacking in case precedent, an examination of federal law is necessary." (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Everts v. Sushi Brokers LLC*, 247 F.Supp.3d 1075 (D. Ariz. 2017) ("ACRA is generally identical to Title VII, and thus federal Title VII case law is persuasive in interpreting the ACRA." (citation omitted)). To succeed under the ACRA, plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the employee establishes a prima facie case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its conduct. *Id.* If the employer meets its burden of production, the plaintiff must then show that the employer's "articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Here, Williams Scotsman argues that Ms. Wentzel fails to establish a prima facie case of sex discrimination under the ACRA. (Mot. at 9; Reply at 7-8.) It further argues it had a legitimate, nondiscriminatory reason for firing her. (Mot at 9-10.) Ms. Wentzel claims she has established a prima facie case and that Williams Scotsman's reason for firing her is pretextual. (Resp. at 12-15.) In reply, Williams Scotsman disputes whether Ms. Wentzel has established that its reason is pretextual. (Mot. at 10 n.3; Reply at 9-11.) The Court further addresses these arguments below.

### A. Ms. Wentzel Has Established a Prima Facie Case Under the ACRA.

To establish a prima facie case of sex discrimination under the ACRA, a plaintiff must show: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3); she was meeting her employer's legitimate expectations when she suffered the adverse employment action; and (4) other employees outside her protected class were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802; *Peterson v.*

*Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). The "test was not intended to be rigidly applied." *Norris v. City & Cty. of San Francisco*, 900 F.2d 1326, 1329 (9th Cir. 1990) (citing *McDonnell Douglas*, 411 U.S. at 802 n.13). Instead, a prima facie case is satisfied when plaintiff offers enough evidence "to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358 (1977). Thus, it follows that under this framework, "[t]he requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . on summary judgment is minimal and does not even rise to the level of preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). "This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by the factfinder, upon a full record." *Chuang*, 225 F.3d at 1124 (internal quotation marks and citation omitted). Although only Ms. Wentzel's latter three showings under the *McDonnell Douglas* framework are challenged here, the Court finds she has established a prima facie case of sex discrimination.

### 1. Ms. Wentzel Suffered An Adverse Employment Action When She Was Fired.

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits . . . [and] in most cases inflicts direct economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998). Although "not every employment decision amounts to an adverse employment action," *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (internal quotation marks and citation omitted), what qualifies as an adverse employment action in the Ninth Circuit is especially broad, *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) ("[A] wide array of disadvantageous changes in the workplace constitute adverse employment actions.").

Ms. Wentzel claims she suffered adverse employment actions when (1) Mr. Reynolds failed to timely approve her sales deals, which caused her to lose the resulting

commissions; and (2) Williams Scotsman terminated her. (Resp. at 12-13, 16.) In framing Ms. Wentzel's sex discrimination claim as one solely alleging wage discrimination, Williams Scotsman argues that she suffered no adverse employment action because she earned more than Mr. Whitaker. (Reply at 7.) It further argues Ms. Wentzel's asserted adverse employment actions do not qualify in establishing a prima facie case with little analysis, but does not dispute that her termination was an adverse employment action. (*See id.* at 7-8.)

There is no dispute that Ms. Wentzel suffered an adverse employment action when Williams Scotsman fired her. *Ellerth*, 524 U.S. at 761-62; *see also White v. AKDHC, LLC*, 664 F. Supp. 2d 1054, 1068 (D. Ariz. 2009). This is clearly a "material change in the terms and conditions of [her] employment." *Cf. Chuang*, 225 F.3d at 1126. Accordingly, she has met her first burden.

### 2. Ms. Wentzel Was Meeting Williams Scotsman's Legitimate Expectations When She Was Fired.

Ms. Wentzel claims she was meeting Williams Scotsman's expectations and even on the way to exceeding her sales goals when she was fired. (Resp. at 13.) In support, she provides evidence of her 2016 and 2017 sales performance record. (*See* PSOF ¶¶ 123-125.) This evidence shows that Williams Scotsman praised her for her 2016 sales performance when she had only reached roughly 65% of her sales goal by June.[10] (*Id.*) Relatedly, the evidence also shows that Ms. Wentzel had already reached 67% of her 2017 sales goal by June and had at least thirteen pending deals in the pipeline with five months remaining to meet the remaining 33% of her target sales. (*Id.* ¶ 15.) In response, Williams Scotsman acknowledges that Ms. Wentzel had already met 67% of her 2017 sales goal and that she had thirteen projects in the pipeline, but nevertheless claims its expectations of her were unsatisfied based on a 2015 PIP. (Reply at 8.) Williams Scotsman's bald rebuttal is unpersuasive. Viewing the facts most favorably to Ms. Wentzel, it appears she was meeting

---

[10] In particular, Williams Scotsman gave her three sales performance awards that year, including the "Elite Three Award," membership in the "100 Club," and a Sales Achievement Award. (*See* PSOF ¶¶ 123-125.)

Williams Scotsman's legitimate expectations when she was fired. *McDonnell Douglas*, 411 U.S. at 802.

### 3. Mr. Whitaker Was Treated More Favorably Than Ms. Wentzel.

Ms. Wentzel claims that Williams Scotsman treated Mr. Whitaker more favorably than her because she was fired even though she outperformed him.[11] (Resp. at 13-14.) In support, she highlights how Mr. Whitaker never reached his 2016 sales goal, unlike her, and that by the time she was fired, they had relatively similar sales performances. (*Id.*; *see also* PSOF ¶¶ 7, 15, 110, 126-27.) Williams Scotsman argues that because Ms. Wentzel had worked as an Account Executive in Arizona longer than Mr. Whitaker, it had not treated her unfavorably by firing her. (Reply at 8.) Williams Scotsman does not challenge whether the two individuals had performed similarly when Ms. Wentzel was fired. (*Id.*) Viewing the two Account Executives' sales performances in the light most favorable to Ms. Wentzel, she has met her burden of showing that Mr. Whitaker was treated more favorably when she was fired but he was not. The fact that they performed similarly with no other meaningful disparity in performance gives rise to an inference that she was fired based on sex. A trial is necessary to resolve this dispute.

### B. <u>Ms. Wentzel Has Provided Sufficient Circumstantial Evidence For a Reasonable Juror to Conclude That Williams Scotsman's Reason for Firing Her is Pretextual.</u>

As noted, after plaintiff establishes a prima facia case under the ACRA, the employer must articulate a legitimate, nondiscriminatory reason for its conduct. *McDonnell Douglas*, 411 U.S. at 804. Here, Williams Scotsman claims it fired Ms. Wentzel because of her unsatisfactory performance. (Mot. at 10.) Specifically, that she was fired because "despite a formal PIP, coaching and counseling, [her] overall performance remained at unsatisfactory levels." (Mot. at 10; Reply at 8.) When the employer meets its burden of providing a legitimate, nondiscriminatory reason for its conduct, the plaintiff must then

---

[11] Ms. Wentzel further argues that Mr. Whitaker was given more support than her, (Resp. at 14), but Williams Scotsman ignores this argument, (*see* Reply at 8.)

show that the employer's articulated reason is pretextual. *Chuang*, 225 F.3d at 1124; *Burdine*, 450 U.S. at 256. Ms. Wentzel argues just that here.

More specifically, and as eluded to above, she claims Williams Scotsman's reason for firing her is pretextual because she was performing similarly to Mr. Whitaker, but he was not fired. (Resp. at 15.) Because they were performing similarly, she claims the reason is objectively invalid and unworthy of any credence. (*Id.*) In response, Williams Scotsman concedes that Ms. Wentzel had performed similarly to Mr. Whitaker, but nevertheless argues she cannot be compared to him because they have differing sales experiences as Account Executives. (Reply at 9.) It further argues its reason is not pretextual because "[e]ven a foolish or trivial rationale will suffice as long as it is not improper or based on discriminatory factors." (*Id.* at 9-10 (citing *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 984 (7th Cir. 1999)).

The Court finds that Ms. Wentzel's circumstantial evidence persuasively establishes that a reasonable juror could conclude that Williams Scotsman's reason for firing her is pretextual. *See Wallis*, 26 F.3d at 890; *see also Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) ("[P]laintiff at the pretext stage must produce evidence in addition to that which was sufficient for her prima facie case in order to rebut the defendant's showing."). As a general matter, Ms. Wentzel "need produce very little evidence of discriminatory motive to raise genuine issue of material fact." *Cf. Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991); *see also Godwin*, 150 F.3d at 1220; *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 870 (9th Cir.1996). Although "circumstantial evidence . . . must be specific and substantial to defeat the employer's motion for summary judgment," *EEOC. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009), Ms. Wentzel's evidence demonstrating her comparable performance history to Mr. Whitaker is "sufficient to create a triable issue of fact as to whether [Williams Scotsman's] proffered reason for [terminating her] was pretextual," *cf. Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001); *see also Boeing*, 557 F.3d

at 1053. Accordingly, Ms. Wentzel's sex discrimination claim under the ACRA withstands summary judgment.[12]

### III. Disability Discrimination Under the ACRA

Ms. Wentzel fails to even mention this claim, let alone support it with any facts or legal argument. (*See generally* Resp.; *see also* PSOF.) Notably, "[o]ur circuit has repeatedly admonished that we cannot manufacture arguments [for parties]." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003); *see also Garcia v. GMAC Mortgage, LLC*, No. CV-09-0891-PHX-GMS, 2009 WL 2782791, at *1 (D. Ariz. Aug. 31, 2009) ("If an argument is not properly argued and explained, the argument is waived."); *Currie v. Maricopa Cty. Comm. College Distr.*, No. CV-07-2093-PHX-FJM, 2008 WL 2512841 at *2 n.1 (D. Ariz. June 20, 2008) ("Plaintiff does not respond to this argument, and her failure to do so serves as an independent basis upon which to grant [the motion]."). Accordingly, Williams Scotsman's Motion with respect to this claim is granted.[13] *See* LRCiv 7.2(i) ("[I]f . . . council does not serve and file the required answering memoranda, . . . such non-compliance may be deemed a consent to the . . . granting of the motion and the Court may dispose of the motion summarily.").

### CONCLUSION

For the foregoing reasons, Williams Scotsman's Motion is granted in part and denied in part. Ms. Wentzel's Equal Pay Act claim fails as a matter of law because she was paid more than her alleged male comparator. Furthermore, Ms. Wentzel's disability discrimination claim fails because she provides no support for it. However, her sex

---

[12] Williams Scotsman also challenges whether Ms. Wentzel has "shown that unlawful discrimination more likely motivated [its conduct]." (Reply at 10.) Specifically, it claims she provides no admissible evidence showing its decision to terminate her was based on discriminatory reasons. (*Id.* at 10-11.) It is true that Ms. Wentzel must point to admissible evidence at the summary judgment stage. *See Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988) ("It is well settled that only admissible evidence may be considered by the trial court and ruling on a motion for summary judgment." (citing Fed. R. Civ. P. 56(e))). However, she has provided admissible evidence tying Williams Scotsman's reason for firing her to her sex. Namely, that the only other Account Executive, Mr. Whitaker, was performing similarly to her but was not fired because of his performance. (PSOF ¶¶ 110, 126.) This is enough for Ms. Wentzel's claim to proceed to trial. *See Wallis*, 26 F.3d at 889.

[13] Even ignoring Local Rule 7.2(i), Ms. Wentzel's claim would not survive summary judgment because she provides no facts supporting it.

discrimination claim under the ACRA survives.

Accordingly,

**IT IS ORDERED** granting in part and denying in part Williams Scotsman's Motion for Summary Judgment, (Doc. 80). The Motion is granted as it relates to Ms. Wentzel's Equal Pay Act and ACRA disability discrimination claims. The Motion is denied, however, as it relates to her ACRA sex discrimination claim;

**IT IS FURTHER ORDERED** that Ms. Wentzel show cause why the Court has subject matter jurisdiction over her sole remaining state law claim within seven (7) days of this Order. Williams Scotsman may file a response within five (5) days of Ms. Wentzel's brief. No reply is authorized;

**IT IS LAST ORDERED** vacating the telephonic trial setting conference scheduled for March 13, 2020 at 8:45 AM. The Court will reschedule if it finds it has subject matter jurisdiction over the remaining claim after supplemental briefing.

Dated this 9th day of March, 2020.

_____
Honorable Susan M. Brnovich
United States District Judge